No. 20,279.

CHARLES RAY HOPPER, ALIAS CHARLES RAY BAKER, *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(382 P. [2d] 540)

Decided June 3, 1963.    Rehearing denied June 24, 1963.

Mr. RICHARD H. DUKE, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. Hickey, Deputy, Mr. John E. Bush, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.

Plaintiff in error, to whom we will refer as defendant, was found guilty of the crime of aggravated robbery. The trial court entered judgment on the verdict and imposed a sentence of from eight to fifteen years imprisonment in the state penitentiary.

As grounds for reversal counsel for defendant presents his argument under three captions as follows:

"1. That the court erred in denying defendant's motion for mistrial made at the commencement of Mr. Feldman's testimony.

"2. That the court erred in denying the motion for suppression of evidence.

"3. That the court erred in denying defendant's motions under Rule 16 (b) Rules of Criminal Procedure."

On May 2, 1961, at about 8:00 P.M., Harry Feldman, owner of Mike's Liquor Store, located on the north side of Colfax avenue immediately west of Wadsworth in Lakewood, Colorado, was robbed of $177.00 by an armed bandit. His assistant who had not seen the criminal notified the sheriff's office of the robbery. Upon the broadcast of the robbery an officer stationed near the scene recalled that at a time shortly before he had seen an off-red and black Mercury with one male occupant leave the White Spot Drive-in parking lot close to Mike's Liquor Store, proceed south on Yarrow street towards Colfax, then back up and go north on Yarrow. He described it as a two-door. This information was broadcast by police officials to patrol cars on duty. After the broadcast another officer noted defendant's car proceeding west on 20th avenue to Wadsworth and then north on Wadsworth. The car, with a single occupant, was a two-tone

red and black 1953 Mercury four-door. The defendant was stopped and questioned. A search of the car disclosed a .38 calibre revolver and a subsequent search of defendant's person disclosed a roll of bills later found to amount to $161.00. Defendant was then taken to Mike's Liquor Store and was identified as the bandit.

At the commencement of the testimony of Mr. Feldman the following took place:

"Q. Will you relate to the jury here what happened there that evening in your store? A. In detail? Q. Yes. A. I was in the backroom in my little office and no one was in the front of the store; and naturally a fellow came into the front door, and the minute I picked up to greet him I recognized that fellow as the same one who held me up about 10 days ago. MR. DUKE: Just a moment, if the Court please. He is talking about a fellow who held him up several months before. I move for a mistrial. THE COURT: The motion will be denied; but the jury will be instructed to disregard that testimony. Q. (By Mr. Willison) I want you to just tell what happened, Mr. Feldman, on the evening of May 2, 1961, in your store. A. As I seen the fellow come into the store — MR. DUKE: If the Court please, he has used the same words again, and I move again. May it please the Court, I do not think this can be cured by an instruction to the jury; and I ask further, if the Court please, that a mistrial be declared. THE COURT: Instruct your witness to testify as to just what happened that night, not what happened previously."

██ The foregoing testimony forms the basis of the first claim of error. While it was not mentioned again at any point during the trial, the motion for mistrial was renewed at the close of the evidence, at which time the district attorney commented as follows:

"For the record I should state with regard to the motion the defendant made, concerning the testimony of Mr. Feldman, the People contend that that was admissible and could be considered by the jury even

though the Court has instructed the jury to disregard it, as showing plan, scheme and design, under the statute, and as announced in the case of Stull v. People, 140 Colo. 270."

The response made by the witness was unsolicited by any question asked of him, and the trial court promptly ordered the statement stricken and instructed the jury to disregard it, notwithstanding the incident to which the witness referred might well have been proper for consideration in establishing the identity of the defendant.

In *Leick v. People,* 136 Colo. 535, 322 P. (2d) 674, with reference to a somewhat similar situation we stated, inter alia:

"Moreover, the trial court promptly and correctly directed the jurors to disregard these statements, and it 'is presumed that the jury followed the court's instruction.' *Bauman v. People,* 130 Colo. 248, 274 P. (2d) 591. Whether a mistrial should be declared rests in the sound discretion of the trial court. '[I]n the absence of abuse of discretion its ruling thereon will not be disturbed on review.' *Routa v. People,* 117 Colo. 564, 192 P. (2d) 436."

From *State v. Sinovich,* 329 Mo. 909, 46 S.W. (2d) 877, we quote the following:

" * * * However, the answer containing this evidence was in both instances, not responsive to the questions asked. At its first intimation an objection was made by defendant's counsel and the objection promptly sustained by the court and the jury admonished to entirely disregard it. We think the defendant was not prejudiced thereby, and the court did not err in not discharging the jury and declaring a mistrial. The discharging of a jury and declaring a mistrial, during the progress of a trial, rests largely within the discretion of the trial court ... "

In the instant case we hold that the trial court did

not abuse its discretion in denying the motion for mistrial.

■ With reference to the second point on which counsel for defendant presents an argument, there was evidence from the officer conducting the search of the car that defendant had no objection and in fact consented that the search be made. As stated in *Williams v. People,* 136 Colo. 164, 315 P. (2d) 189:

" * * * First of all the search loses its illegal effect when defendant, complaining thereof, gave permission for such a search of the premises. This consent removed the applicability of the constitutional guaranty."

The record further indicates that the search and seizure involved was not "unreasonable." The officer conducting it had a probable and reasonable belief that an offense had been committed. On the basis of the information in his possession it was proper for him to stop the defendant and conduct the search. The search and seizure, incident to defendant's apprehension, was therefore a reasonable one for which probable cause existed and defendant's motion to suppress the evidence was properly denied.

■ At the conclusion of the direct examination of the police officers, counsel for defendant addressed the court as follows:

"MR. DUKE: If the Court please, in accordance with the rule, at this time I move the Court to order the prosecuting attorney and the state to produce any statement in their possession or under their control which relates to the subject matter of the testimony under direct examination, any written statements, mechanical records, or electrical recordings, or transcriptions thereof, or any stenographic or written statements, or any stenographic or written statements or notes which in substance are recitals of oral statements made by this witness and which were reduced to writing contemporaneously with the making of such oral statements."

To a question from the court as to whether any such

statements existed the prosecuting attorney replied as follows:

"To the best of my knowledge the District Attorney's office has neither statements nor recordings of any kind."

Another request by counsel for defendant was:

"At this time, if the Court please, I renew my motion, that the state, the District Attorney, be required to produce any statement of the witness under their control, either writing, recording, or stenographic transcript of such a statement. THE COURT: Mr. Duke, the District Attorney says he doesn't have any. MR. DUKE: Thank you, your Honor. MR. WILLISON: At this time the District Attorney will state that neither I, personally, nor any other of the members of the District Attorney's staff have any written statements."

Rule 16 (b), Colorado Rules of Criminal Procedure, provides in part:

"After a witness called by the State has testified on direct examination, the court shall on motion of the defendant order the prosecuting attorney to produce any statement of the witness in the possession of the prosecuting attorney or under his control which relates to the subject matter to which the witness has testified. * * * "

We are at a loss to understand how it can be urged that the trial court erred in refusing to require the district attorney to produce a statement or document not in existence.

■ Counsel for defendant asked that the district attorney be required to turn over to him for examination his work sheets or trial notes made in preparation for the trial. Thereupon the following occurred:

"THE COURT: Do you go so far as to say that that rule provides that the District Attorney or one of his Deputies can't take notes in connection with the case — MR. DUKE: I say if he makes notes on the basis of oral statements given to him by a witness that those

notes are subject to my examination, even though such notes are not verbatim but are only in substance."

The court denied the request and was correct in so doing. The work sheets of the district attorney which are made by him in preparation for the trial of a criminal case do not come within the coverage of Rule 16 (b) of the Rules of Criminal Procedure.

The guilt of the defendant was overwhelmingly established by competent evidence, and the judgment accordingly is affirmed.

MR. JUSTICE DAY and MR. JUSTICE PRINGLE concur.